We'll move to our second argument for the day. Plute v. Kijakazi, case number 21-35989. May it please the court. My name is Eitan Kaslyanich. I am representing Jennifer Plute in this matter. Jennifer Plute has been unable to work since at least March 2018 as a result of the functional effects of her many, mostly mental impairments, but also she has bilateral ankle laxity, and obesity, and these have limited her to sedentary work, as the ALJ found. The ALJ erred here by improperly rejecting the medical opinions of Plute's treating psychologist, Dr. Shope, and an examining psychologist, Dr. Senske. The findings and opinions of these two psychologists show that Plute has functional limitations that prevent her from working, but the ALJ rejected this evidence without stating any valid reason. The ALJ also erred by improperly rejecting Plute's testimony about her symptoms and limitations. The ALJ did not any specific clear and convincing reason for rejecting any of Plute's testimony, and the ALJ also erred by improperly rejecting the lay testimony from Plute's mother, Katrina Jones. Mr. Yannick, am I correct that we are to apply the 2017 regulations here because her claim was filed after that date? Yes and no. Well, for one thing, I think under the 2017 regulations, the ALJ's analysis does not hold muster because his reasons for his analysis of supportability and consistency are flawed. There is no supportability for his finding rejecting the opinions of Plute's treating and examining psychologists. His finding regarding the consistency of their opinions is also flawed. In addition, his improper rejection of the testimony by Plute and the lay evidence from her mother, neither of those passed muster. Those rules did not change, and under the rules that govern those issues, the ALJ analysis does not meet the legal standards in the Ninth Circuit. Let me back you up to make sure I understand the differences between the old and the new regulations. My understanding is that under the prior law, we followed what I'll call a hierarchical evaluation based on the categorization of either treating, examining, consulting, and maybe there's a fourth one, I don't know, but in any event, we gave heightened deference to the opinion of the treating physician. My understanding is under the new regulations, we've done away with the hierarchical approach, and instead we sort of look at the record holistically and ask whether or not it is persuasive based on consistency with and supportability by the record. Have I got the standard correct? More or less, the problem with the new standard isn't that simply taking away the hierarchical analysis does not by itself implicate the new standard as being improper or arbitrary and while the regulations still require an ALJ to consider the issues of whether a physician has treated the claimant and whether he's familiar with the claimant, whether he's examined the claimant, issues such as that, whether he has specialization that would be relevant to his opinion. The ALJ is required to consider these issues, but the ALJ is not required to articulate how he evaluated those issues, and it leaves the court with a decision that doesn't have a rationale stated in it. Now, Mr. Yarns, the problem I'm having is that as I understand the legislative history behind the change, in essence, the agency was rejecting the approach that this court in particular had taken. I don't think we were the only circuit in the country to do it, but it made a difference under our pre-2017 precedent depending on what type of opinion we were examining as to whether clear and convincing evidence had to be adduced in order to reject it if it was a treating or examining physician or whether the ALJ could simply cite to a germane reason if it was a non-treating, non-examining source. And that standard and that case law, as I understand it, if the new regs mean what they say, is simply no longer applicable in our review of these cases. Well, the problem is not with the old case law versus the new regulations. The problem is that to the extent that the new regulations relieve an ALJ of the duty to articulate how he or she is evaluating the medical evidence, the new regulations violate the Social Security Act, the Administrative Procedure Act, and it also violates a bunch of Social Security regulations that state that an ALJ must explain the basis of his decision. I think you're reading out of the new regulations the fact that the ALJ is asked to evaluate for persuasiveness the claims based on the consistency between what the claimant is saying and what is actually supported in the record. And it seems to me that would require the ALJ to articulate some reasons to explain why he or she found it persuasive or not. Am I missing something here? Yes, you are. The issues of whether or not a physician treated the person, treated the person many times, whether they were a specialist. But why wouldn't those be factors that would factor into the persuasiveness analysis? Well, I think you're right. Those are factors. But those factors in this case, certainly, and in many other cases I've been seeing, the ALJ does not state any kind of reason supported by substantial evidence for, it doesn't explain why it is that, for example, in this case, why it is that Dr. Shope, who saw, who treated Plut many times, why his opinion carries less weight and is less persuasive than the opinions of non-examining physicians who never once, never even examined her, never and didn't even review all of the evidence. So are you seeing decisions now by ALJs under the new standard where they declare, generally, I am persuaded by this evidence in the record, but not by that evidence in the record without explaining their conclusion? I'm seeing, yes, I'm seeing decisions where the ALJs say, I find this more persuasive for, well, they say reasons, but typically they don't explain, for example, how they weighed the issue of whether or not someone was a treating physician or whether or not they were a specialist. They don't, under the regulations, they don't have to explain that. And that's the part of the regulations, I believe, violates the Social Security Act and the Administrative Procedure Act. They're not explaining what they're thinking. And we don't know what they're thinking. They don't tell us. Well, let's take, let's take an example. I'm referring to ER 21, which is page seven of the ALJs decision on mental impairments. Your claimant, your client was claiming that as a result of her mental symptoms and her diagnoses that she was unable to work. And the ALJ points to the fact that the mental health treatment records only covered the period September 2018 through 2009, December 2019, and mostly related to situational stressors, which I guess are transient, such as the death of her cat from February through September of 19, strained family dynamics. And so the ALJ says, I find that basically these are situational in nature rather than due solely to her medically determinable impairments. Why isn't that a sufficient explanation as to why ALJ was not persuaded that she suffered debilitating mental health impairments? Well, in my brief, I address, I'm sorry. In my brief, I address, I'm so sorry. Go ahead. In my brief, I address every single one of the ALJs reasons for rejecting Dr. Shope's opinion and Dr. Senske's opinion and explain why each of those reasons, none of them are valid reasons supported by substantial evidence. Some of them are obviously, for example, he rejected Dr. Senske's opinion in part based on a supposed conflict with a record that's not in the record because it was a treatment note for somebody else and it was struck from the record and yet he relied on it. But to continue on with my question, if you go to page 22 of the excerpt of the record, there are three more paragraphs at the top of the page. I won't read them all, but basically he articulates why, from a mental health standpoint, the record simply didn't support what she was saying. That when she showed up for her appointments, there was no evidence of irritability or belligerent behavior. Basically, she presented typically mild presentation, which doesn't corroborate her claim of debilitating cognitive, social and mental dysfunction. And then he talks about testing by Dr. Penske, a psychologist. And then in the third paragraph, that she took no mental health medications that you would normally expect to see prescribed for someone who had serious mental impairments. Why are those not all factors that are properly considered in persuading the ALJ that she's not impaired by mental health disabilities? Well, I'll start with the last thing you mentioned. She was not, she was taking medications. The ALJ got that fact completely wrong. There was a time period, she had bad reactions to two medications, stopped taking those. At the time of her hearing, she was once again taking medication. So the medication was basically cannabis-based derivative. No, she was also taking prescribed medication. Okay. At the time of the hearing, she testified about that. So every one of the ALJ's reasons for rejecting, see, we're overlapping here between her opinion. I guess I should address what you asked about Dr. Shope's opinion and about whether or not it was just based on situational stressors. She had situational stressors, but that was not the sole problem here. This is longstanding mental illness that was very severe and that Dr. Shope was a witness to and prescribed medications for. It was not, if it was solely, I agree, if it was solely situational stressors, I think you have a valid point and the ALJ would as well, but it's not. The overarching, as I'm listening to your argument, it's just reinforcing this idea that you appear to be asking us to go back and reweigh the evidence. You have a position of how these reports should be interpreted, why they're valid. As Judge Tallman has indicated, the ALJ discussed those. He gave various reasons for rejecting them. Aren't we left with, I mean, isn't that what the ALJ is supposed to do? I get your point on some of these where if he's relying on record evidence that actually isn't in the record, it's for someone else, okay, but as long as it's in the record and he's weighing it, why do we step back in and say, well, no, actually that should have been persuasive. It just seems like a very low standard of review, so I don't know how we reject these pages of explanations and rule for your client here. Because what I would ask you to do is look at each and every one of his reasons for rejecting Dr. Shope's opinion and each and every one of his reasons for rejecting Dr. Senske's opinion and each and every one of his reasons for rejecting Plut's testimony and each and every one of his reasons for rejecting the lay evidence. None of them withstand careful scrutiny. It's an unusual case where one after another after another, the basis of the ALJ's analysis is simply not supported by substantial evidence. He's twisting the facts around and he's not, and I do, for example, the other thing that Judge Tallman mentioned that she was not appearing at medical appointments all distressed and having, you know, she wasn't always looking terrible at these appointments. That's not a determinant of she can function when she's trying to leave her house and falls apart and can't do it. That's the issue here is that her panic disorder is so severe and her PTSD is so severe, she can't even leave her house on her own. He says she went to Walmart. She went to Walmart one time. There was a shooting there for bad luck, but that's it. The evidence shows she tried there once. She went there not alone, and she was advised as part of the treatment for her impairment to try going out and doing things that are difficult for you to do. Okay. Tried doing that. Didn't work. So, I think that every one of his reasons doesn't withstand careful scrutiny, and I ask you to provide that careful scrutiny. Counsel, appreciate your argument, and we'll give you a minute for rebuttal. Good morning, Mr. Janich. Good morning, Your Honors. May it please the Court, Jeff Staples here for the Commissioner, who asks that you affirm the District Court's judgment because substantial evidence supports the ALJ's findings of fact. I'd like to turn first to the Commissioner's revised regulations because that wasn't really an issue I got much of a chance to respond to in the brief. Mr. Janich is arguing that those are arbitrary and capricious, but as this Court . . . He didn't argue that until the reply brief, right? That's right, Your Honor. So, isn't that argument waived? I would say it is, Your Honor, and to the extent it's not, the Woods case that this Court issued recently really goes into the basis for the Commissioner's decision-making about how those regulations were promulgated, why the changes were made that Judge Tallman was alluding to, and there really are, you know, a lot of good reasons why the Commissioner did that, and the argument from counsel that the new regulations relieve the ALJ of any obligation to articulate how the manner in which he considered the medical opinions is just not true. As the Court can see, the ALJ spent, you know, ample time on transcript pages 24 and 25 explaining how he arrived at the persuasiveness assessment of those two opinions. So, under the regulations, as counsel points out, the ALJ is not required to explain why the medical source's relationship with the claimant either supports or detracts from its persuasiveness. However, the two most important factors, as Judge Tallman was pointing out, consistency and supportability, those have to be articulated in every case. So, the ALJ does need to articulate a basis for the manner in which he or she considers every medical opinion, and that is going to be with every case that is decided under these revised regulations. And as the Court has been pointing out, the ALJ certainly did that here, and you can see how the ALJ assessed the persuasiveness of these opinions. For example, Dr. Shope, Plut's treating medical source, said that she was unable to keep her appointments because she had such severe anxiety and agoraphobia. And then, as the ALJ pointed out, that was not the case. She didn't miss appointments. She went to her appointments, you know, before COVID-19. She was going in person and after she was going on the phone. So, it just, that thing that Dr. Shope said was not true, and that detracted from the persuasiveness of that opinion. Likewise, they're describing a person who's so limited by agoraphobia and PTSD and anxiety that she really is homebound, essentially. And that wasn't true either. She went out for hikes. She went shopping. She took almost no treatment for these allegedly disabling conditions. Although, in the reply brief, they said that she was taking Prozac and Zoloft, and that they were not effective. Does the government dispute that fact? Yeah, so at the hearing, and this is a transcript 85, this is at the administrative hearing, she says she's taking medication. But in the very next sentence, she says, when I have an anxiety problem, I take my marijuana derivative. Not Prozac and Zoloft. She takes a marijuana product and listens to an audio track on YouTube. Those are not the kind of treatments that you would expect to see from a person who is suffering from the anxiety that Plut claimed. Well, but what, so what is the evidence about the Prozac and the Zoloft? I mean, was there any indication in the record of how long she was taking it? I don't have that off the top of my head. I didn't see that. I know that she did tell several providers that she was not taking anything. And then by the time of the hearing, although she said she was on medications, what she pointed to immediately thereafter is marijuana. So I don't know. Mr. Yannicks touched on that when he pointed out that because she didn't have much money, it was difficult for her to afford, I guess, both the medications or to be seen by more specialists. Well, I don't think the record bears that out, Your Honor. She did attend therapy fairly regularly. Okay, so it's not that she's unable to go to any kind of treatment. But the treatment she goes to is not centered around these complaints that she gives to the agency about being unable to interact with any other people because she's so distrustful and these crippling fears. You know, she tells the agency that she's afraid that an asteroid's going to crash into her house. That's not what she's talking about to treatment providers. She's talking about fairly normal life situations, difficulty dealing with her family, difficulty processing the death of her cat. And it's, you know, it's commendable for someone to seek therapy for those issues. But they are not the same issues that she was alleging prevented her from working. And they're also not the same issues that Drs. Shope and Senske seem to think would keep her from doing any work at all. And it's also, I think it's worth bearing in mind, you know, the ALJ didn't find she could do every job under the sun. You know, she can do a limited range of unskilled work with fairly limited social contact. So the ALJ didn't wholesale reject the entire notion that she suffers from these impairments. She does. And she has some limitations. But the ALJ had to look at the record as a whole and see that the degree of limitation that she was claiming just wasn't borne out by that record. So while she has some limitations, particularly social limitations, those did not prevent her from performing any kind of work at all. Because substantial evidence supports those findings, we would ask the court to affirm unless the court has any further questions. Thank you very much for your time. We'll give you one minute for rebuttal. Thank you. Dr. Shope did report that she was missing appointments and a psychologist not going to make that up. So he also and I think this is once again, this is the most significant thing. We are not arguing that she couldn't do some simple job for a day or an hour. What we're she, Dr. Shope documented that she was not leaving her house without her cat and then a cat died. She was leaving with other people, but she was not leaving on her own. A person who cannot leave their house on their own by themselves cannot perform competitive work in the national economy. And that's what this boils down to. The ALJ had no stated no reason supported by substantial evidence for rejecting that limitation, which is well documented by the medical evidence and by testimony and by the lay evidence. We therefore ask that the court reverse the ALJ's decision. Thank you. Thank you, counsel. Thank you to both counsel for your arguments in the case. The case is now submitted. We'll move on to our third argument.
judges: TALLMAN, NELSON, FORREST